**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CHARLES PAPPALARDO, et al., | : | CIVIL ACTION NO. 11-1320 (MLC) |
| | : | |
| Plaintiffs, | : | **MEMORANDUM OPINION** |
| | : | |
| v. | : | |
| | : | |
| COMBAT SPORTS, INC., et al., | : | |
| | : | |
| Defendants. | : | |

**COOPER, District Judge**

Plaintiffs, Charles Pappalardo, Michael Slebodnik, Jeffrey Welsh, and David Youshock (collectively, "Plaintiffs"), commenced this putative class action against defendants, Combat Sports, Inc., DeMarini Sports, Inc., Easton Bell Sports, Inc. ("Easton"), Hillerich & Bradsby Co., Wilson Sporting Goods, Inc. ("Wilson"), Mattingly Hitting Products, Inc., Miken Sports, Nike USA, Inc. ("Nike"), Rawlings Sporting Goods Co., Inc., and Worth Sports (collectively, the "Manufacturer Defendants"), and Little League, Inc. ("Little League"), and Babe Ruth League, Inc. ("Babe Ruth") (collectively, the "League Defendants"), in New Jersey Superior Court. (Dkt. entry no. 1, Rmv. Not. & Ex. A, Am. Compl.) Defendants removed on the basis that this Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). (Rmv. Not. at ¶ 18.)

The Amended Complaint asserts claims for (1) violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 et

seq.; (2) breach of express warranty pursuant to N.J.S.A. §
12A:2-313; (3) breach of implied warranty of merchantability,
pursuant to N.J.S.A. § 12A:2-314(1) & (2); (4) breach of implied
warranty of fitness for a particular purpose, pursuant to
N.J.S.A. § 12A:2-315; (5) unjust enrichment; and (6) negligence.
(Am. Compl. at ¶¶ 49-128.)  Plaintiffs assert each of these six
claims separately as to the Manufacturer Defendants and the
League Defendants.  (Id.)

Each defendant now moves to dismiss the Amended Complaint
insofar as asserted against it, pursuant to Federal Rule of Civil
Procedure ("Rule") 12(b)(6).  (Dkt. entry no. 36, Easton Mot. to
Dismiss; dkt. entry no. 37, Wilson Mot. to Dismiss; dkt. entry
no. 38, Combat Sports, Inc. Mot. to Dismiss; dkt. entry no. 39,
Nike Mot. to Dismiss; dkt. entry no. 40, Hillerich & Bradsby Co.,
Miken Sports, Rawlings Sporting Goods Co., Inc., and Worth Sports
Joint Mot. to Dismiss; dkt. entry no. 42, Mattingly Hitting
Products, Inc. Mot. to Dismiss; dkt. entry no. 44, Little League
Mot. to Dismiss; dkt. entry no. 59, Babe Ruth Mot. to Dismiss.)[1]
Defendants Combat Sports, Inc., Hillerich & Bradsby Co., and Nike
have since been voluntarily dismissed from the action by
stipulation, and thus their respective motions to dismiss have

_____

[1] Defendant DeMarini Sports, Inc., has not entered an appearance,
but is alleged to be "a wholly-owned division of Wilson."  (Am.
Compl. at ¶ 3.)  Wilson's brief in support of its motion to
dismiss states that it was "improperly pled as Wilson Sporting
Goods, Inc. and DeMarini Sports, Inc."  (Dkt. entry no. 37,
Wilson Br. at 1.)

been rendered moot.   (See dkt. entry nos. 62, 67, and 68, Stips. of Dismissal.)   The Court decides the motions on the submissions of the parties, without oral argument, pursuant to Local Civil Rule 78.1(b).   For the reasons stated herein, the Court will grant the separate motions to dismiss.

## BACKGROUND

Plaintiffs allege that they "purchased composite barreled bats manufactured by the Manufacturer Defendants and licensed, approved and endorsed by the League Defendants" for use in organized youth baseball.   (Am. Compl. at ¶ 14.)

Plaintiffs assert that the Manufacturer Defendants made representations regarding the "bat performance standard" ("BPF") of the composite barreled bats in question, specifically, that the "Manufacturer Defendants agreed to manufacture and sell bats with a BPF of 1.15 or lower," eventually "the 1.15 BPF began to be printed on the bats themselves," and that the League Defendants "instituted rules and regulations regarding BPF." (Id. at ¶ 20.)[2]   They allege that research performed in October 2010 indicated that the BPF of composite barreled bats exceeded

---

[2] Nowhere in the 67-page Amended Complaint is the particular significance or relevant history of "BPF of 1.15" or "compliance with a BPF of 1.15" explained.   However, a press release attached as an exhibit to the Amended Complaint indicates that "[t]he maximum performance standard for all non-wood bats in the divisions for 12-year-olds and below [in Little League] is a Bat Performance Factor (BPF) of 1.15."   (Am. Compl., Ex. A, 12-30-10 Little League Press Release; accord Am. Compl. Ex. C, 1-14-11 Babe Ruth Memo (same).)

the listed BPF "once put into actual use," and that the League Defendants imposed moratoria on composite barreled bats in December 2010 and January 2011, which were later amended to bar from use only those composite barreled bats not on each league's list of approved bats.  (Id. at ¶¶ 24-29.)  Babe Ruth allegedly lifted its moratorium on composite barreled bats on February 4, 2011.  (Id. at ¶ 30.)

Plaintiffs allege that they relied upon "the Manufacturer Defendants' advertising and marketing, the representations and warranties contained on the packaging and labels, the representations and warranties contained on the actual bats themselves, and the League Defendants' licensing, approval and endorsement" in purchasing composite barreled bats for their children.  (Id. at ¶ 23.)  They seek to represent a class composed of

> All New Jersey residents who purchased, within six years prior to the filing of this Complaint, composite barreled bats manufactured by the Manufacturer Defendants which had been licensed, endorsed and/or approved by the League Defendants and have or had been ruled ineligible for use in Little League (Majors) 12 and Under Divisions and/or Cal Ripken Division (ages 4-12) of Babe Rule Baseball and/or had a moratorium placed on their use by those organizations.

(Id. at ¶ 32.)  Plaintiffs allege their loss to include "the purchase price for the composite barreled bats."  (Id. at ¶ 46.)

The basis of each of the claims against the Manufacturer Defendants is that they allegedly advertised and marketed

4

composite barreled bats as "being in compliance with the BPF of 1.15" without disclosing that such bats "would not remain in compliance with the BPF of 1.15 once . . . actually placed in use." (See, e.g., id. at ¶¶ 54-55.)  The factual predicate for the claims against the League Defendants is "their licensing, endorsement and approval that the composite barreled bats were in compliance with a BPF of 1.15" and therefore "suitable for use in Little League and Babe Ruth" youth baseball. (See, e.g., id. at ¶¶ 93-94, 116.)

**DISCUSSION**

## I.   12(b)(6) Motion to Dismiss Standard

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "[W]here the well-pleaded facts do not permit the court

5

to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--that the 'pleader is entitled to relief.'"  Iqbal, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

The NJCFA claim is subject to the heightened pleading standards of Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed.R.Civ.P. 9(b); see Sheris v. Nissan N. Am., Inc., No. 07-2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008); Parker v. Howmedica Osteonics Corp., No. 07-2400, 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008) ("[NJ]CFA claims sounding in fraud are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b).") (quotation omitted).

"The purpose of Rule 9(b) is to provide notice of the precise misconduct with which the defendants are charged and to prevent false or unsubstantiated charges."  Rolo v. City Inv. Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998) (internal quotation and citation omitted).  "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).  The allegations also must include "who made a misrepresentation to whom and the general content of the misrepresentation."  Lum v. Bank of Am.,

6

361 F.3d 217, 224 (3d Cir. 2004).  If this specific information
is not readily available, a plaintiff may use "alternative means
of injecting precision and some measure of substantiation into
their allegations of fraud."  In re Rockefeller Ctr. Props. Sec.
Litig., 311 F.3d 198, 216 (3d Cir. 2002) (quotation omitted).

The Court, in evaluating a Rule 12(b)(6) motion to dismiss
for failure to state a claim, may consider the complaint,
exhibits attached thereto, matters of public record, and
undisputedly authentic documents if the plaintiff's claims are
based upon those documents.  See Pension Benefit Guar. Corp. v.
White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

## II.  New Jersey Consumer Fraud Act Claims

The NJCFA provides in relevant part:

> The act, use or employment by any person of any
> unconscionable commercial practice, deception, fraud,
> false pretense, false promise, misrepresentation, or
> the knowing, concealment, suppression, or omission of
> any material fact with intent that others rely upon
> such concealment, suppression or omission, in
> connection with the sale or advertisement of any
> merchandise or real estate, or with the subsequent
> performance of such person as aforesaid, whether or not
> any person has in fact been misled, deceived or damaged
> thereby, is declared to be an unlawful practice.

N.J.S.A. § 56:8-2.  The term "person" as used in the NJCFA
includes, inter alia, natural persons, partnerships,
corporations, companies, trusts, business entities and
associations.  N.J.S.A. § 56:8-1(d).

7

To state a NJCFA claim, a plaintiff must allege the following elements: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff[s]; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009).

Unlawful practices under the NJCFA fall into three general categories: affirmative acts, knowing omissions, and regulation violations. Frederico, 507 F.3d at 202 (quotation omitted). Intent to defraud is not necessary to show unlawful conduct by an affirmative act of the defendant, but is an element of unlawful practice by knowing omission of the defendant. See Torres-Hernandez v. CVT Prepaid Solutions, Inc., No. 08-1057, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008). Plaintiffs plead unlawful conduct against the Manufacturer Defendants in the form of knowingly omitting to disclose "that the composite barreled bats would not remain in compliance with the BPF of 1.15" after being broken in. (Am. Compl. at ¶¶ 55, 94.)

### A. Manufacturer Defendants

The Court finds that the allegations in the Amended Complaint lack the requisite specificity – who, what, and where – to sustain a cause of action under the NJCFA against any of the Manufacturer Defendants. First, Plaintiffs' allegations in support of its NJCFA claim refer only to the "Manufacturer Defendants," without distinguishing the actions or omissions of any one named Manufacturer Defendant from any other. (See id. at

8

¶¶ 51-60.)  Failure to inform each defendant as to the specific fraudulent acts alleged against it contravenes the pleading requirements of Rule 9(b).  See Hale v. Stryker Orthopedics, No. 08-3367, 2009 WL 321579, at *6 (D.N.J. Feb. 9, 2009).  Second, as noted above, the Amended Complaint makes no specific allegations as to the relevance and meaning of the "BPF of 1.15," such that it is not evident from the face of the Amended Complaint why representations that a composite barreled bat had a BPF of 1.15 would be misleading. (Am. Compl. at ¶ 20.)  See supra n.2.  Nor does the Amended Complaint make any specific allegations as to the content of the alleged misleading advertising or marketing, with the exception that the bats may have been stamped as having a 1.15 BPF.  (Am. Compl. at ¶ 20.)

With regard to the element of ascertainable loss, Plaintiffs' bare allegation that the Manufacturer Defendants "caused Plaintiffs and the Class to suffer an ascertainable loss in the amount of their [sic] purchase price (plus any applicable finance charges and resulting interest) of the composite barreled bats in question" will not carry their pleading burden.  See Franulovic v. Coca Cola Co., Nos. 07-539 & 07-828, 2007 WL 3166953, at *7 (D.N.J. Oct. 25, 2007) (holding that general statements that defendant's claims were misleading, without any specifics about when, where, and for how much, and how often the plaintiff purchased the defendant's product, failed to establish the requisite element of ascertainable loss); accord Solo v. Bed

Bath & Beyond, Inc., No. 06-1908, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007).  Plaintiffs make no representations whatsoever as to (1) which make and model bats were purchased, (2) from whom the bats were purchased, and (3) when the bats were purchased. (Am. Compl. at ¶ 60.)

There is also absolutely no support for Plaintiffs' conclusory statement that the "Manufacturer Defendants' conduct, acts, and/or omissions as to the BPF of the composite barreled bats have rendered the bats unusable."  (Am. Compl. at ¶ 59.) Because Plaintiffs have not specifically identified any of the "composite barreled bats in question," the Court has no way of knowing whether the "bats in question" are even in fact banned from use in Little League.[3]  Furthermore, Plaintiffs allege no facts in support of this claim other than that the Manufacturer Defendants represented that the composite barreled bats had a BPF of 1.15 or lower; this allegation lacks the "aggravating circumstances" necessary to transform what is essentially a breach of warranty claim into a consumer fraud claim.  See Suber v. Chrysler Corp., 104 F.3d 578, 587 (3d Cir. 1997); Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994) (observing that "a

_____

[3] It is evident from the face of the Amended Complaint that all "bats in question" may be used in Babe Ruth games, insofar as that league lifted its composite barreled bat moratorium for the 4-12 year old division.  It further appears that a ban on certain composite barreled bats by Little League does not, as Plaintiffs allege, "render the bats unusable"; obviously, such bats could still be used for a variety of purposes, such as non-Little League play or batting practice.

breach of warranty . . . is not per se unfair or unconscionable," and "substantial aggravating circumstances must be present in addition to the breach").  The Amended Complaint alleges no facts whatsoever from which the Court could infer that the Manufacturer Defendants "acted with knowledge" that the composite barreled bats would not continue to conform to the 1.15 BPF standard. Because "intent is an essential element of the fraud," the NJCFA claim must be dismissed insofar as it is brought against each of the Manufacturer Defendants.  Cox, 647 A.2d at 462.

### B.   League Defendants

Plaintiffs' NJCFA claim against the League Defendants alleges that they "deceptively and unlawfully advertis[ed] by way of their licensing, endorsement and approval that the composite barreled bats were in compliance with a BPF of 1.15."  (Am. Compl. at ¶ 93.)  They assert that this was a misleading omission because the bats "would not remain in compliance with the BPF of 1.15 once . . . actually placed in use."  (Id. at ¶ 94.)

As with the NJCFA claim asserted against the Manufacturer Defendants, because Plaintiffs allege a fraud in the form of an omission, they must also show that the omission was knowingly and intentionally made.  See Cox, 647 A.2d at 462; see also Maniscalco v. Brother Int'l Corp. (USA), 627 F.Supp.2d 494, 499-500 (D.N.J. 2009).  Plaintiffs' only factual allegation indicating knowledge or intent by either League Defendant is that "[i]n and around October 2010, Little League commissioned

11

scientific testing . . . to evaluate the BPF of composite barreled bats," which allegedly showed "that composite barreled bats exceed the BPF <u>once put into actual use</u>." (Am. Compl. at ¶ 25 (emphasis added).) This allegation in no way supports Plaintiffs' attempt to include in the putative class all New Jersey residents "who purchased, <u>within six years</u> prior to the filing of the Complaint, composite bats manufactured by the Manufacturer Defendants," nor does it support an inference that the League Defendants knew and intentionally failed to disclose that the composite barreled bats in question would eventually exceed the stated BPF. (<u>Id.</u> at ¶ 32.)

The claim also fails against the League Defendants for many of the same reasons it cannot be maintained against the Manufacturer Defendants, including a total lack of any "substantial aggravating circumstances" to raise this claim from a simple breach of warranty claim to one sounding in fraud. Little League argues compellingly that by ordering testing of the bats and imposing the moratorium while it conducted a process to screen composite barreled bats for safety, it "was honest, forthright and acted in good faith." (Dkt. entry no. 44, Little League Br. at 20.) The moratoria themselves show that both League Defendants were publicly forthcoming with information about the BPFs of composite barreled bats once those entities themselves received that information. (<u>See</u> dkt. entry no. 59, Babe Ruth Br. at 13-14.)

12

Babe Ruth points out that Plaintiffs can make no showing of ascertainable loss as to it because its moratorium on the composite barreled bats in question was lifted prior to the filing of the Complaint on February 24, 2011.  (Id. at 14.)  No showing of ascertainable loss has been made as to either League Defendant, for the same reasons discussed with respect to the Manufacturer Defendants.  We further observe that Plaintiffs do not allege with any specificity whatsoever the purported "licensing, endorsement and approval" made by the League Defendants, and thus have not satisfied their pleading burden under Rule 9(b).

Accordingly, the NJCFA claim insofar as asserted against the League Defendants will be dismissed.  Plaintiffs will be afforded the opportunity to move for leave to file an amended pleading as to this claim and as to both the League Defendants and Manufacturer Defendants.  Such putative amended pleading must plead the NJCFA claim with the requisite level of particularity, and therefore must not make the allegations generally against "League Defendants" or "Manufacturer Defendants" in the manner Plaintiffs have done in the Amended Complaint.

## III. Breach of Express Warranty Claims

New Jersey's Uniform Commercial Code, N.J.S.A. § 12A:2-313, governs express warranties, and provides that

(1)  Express warranties by the seller are created as follows:

13

> (a) Any affirmation of fact or promise made by
> the seller to the buyer which relates to the
> goods and becomes part of the basis of the
> bargain creates an express warranty that the
> goods shall conform to the affirmation or
> promise.
>
> (b) Any description of the goods which is made
> part of the basis of the bargain creates an
> express warranty that the goods shall conform
> to the description.
>
> . . .
>
> (2) It is not necessary to the creation of an express
> warranty that the seller use formal words such as
> "warrant" or "guarantee" or that he have a
> specific intention to make a warranty, but an
> affirmation merely of the value of the goods or a
> statement purporting to be merely the seller's
> opinion or commendation of the goods does not
> create a warranty.

N.J.S.A. § 12A:2-313.  To state a claim for breach of express

warranty, "Plaintiffs must properly allege: (1) that Defendant

made an affirmation, promise or description about the product;

(2) that this affirmation, promise or description became a part

of the basis of the bargain for the product, and (3) that the

product did not ultimately conform to the affirmation, promise or

description." Snyder v. Farnam Cos., Inc., 792 F.Supp.2d 712,

721 (D.N.J. 2011).  An action for a breach of an express warranty

must be commenced within four years after the cause of action has

accrued, though by agreement the parties may reduce the

limitation period to not less than one year.  N.J.S.A. § 12A:2-

725(1).  A cause of action accrues "when the breach occurs,

regardless of the aggrieved party's lack of knowledge of the

14

breach," and a breach of warranty occurs "when tender of delivery is made, except where a warranty <u>explicitly</u> extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  N.J.S.A. § 12A:2-725(2).

### A.   Manufacturer Defendants

The Amended Complaint alleges that the Manufacturer Defendants breached express warranties "contained in the Manufacturer Defendants' advertising and marketing materials, on the labels and packaging of the bats, and on the bats themselves."  (Am. Compl. at ¶¶ 62-63.)  Plaintiffs further assert that "the Manufacturer Defendants' affiliates, authorized dealers, online retailers, and mainstream retailers similarly featured the express warranty that the composite barreled bats were in compliance with the BPF of 1.15," and that this warranty was breached because "the composite barreled bats are not in compliance with the BPF of 1.15."  (Am. Compl. at ¶¶ 64-65.)

The Manufacturer Defendants contend that these allegations do not satisfy Plaintiffs' pleading burden under Rule 8.  (<u>See,</u> <u>e.g.</u>, Wilson Br. at 17; dkt. entry no. 36, Easton Br. at 15; dkt. entry no. 39, Nike Br. at 25.)  The Court agrees.  It is true that Rule 8 "does not require 'detailed factual allegations.'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555). However, by not indicating in the Amended Complaint which bats

were purchased, when they were purchased, what warranty representations were made, and what warranty promises were breached, Plaintiffs' allegations constitute the type of "unadorned, the-defendant-unlawfully-harmed-me" accusation that will not pass muster under the applicable pleading standard.   Id. The allegations in the Amended Complaint utterly lack of factual support for the breach of warranty claims, and thus are insufficient "to raise a right to relief above the speculative level."   Twombly, 550 U.S. at 555.   Even assuming, as Plaintiffs suggest, that their allegation that the bats were stamped as having a BPF of 1.15, that allegation, without more, does not allow for an inference that merely having a BPF of 1.15 at the time of manufacture and sale is the type of "affirmation of fact or promise" for continuing compliance upon which Plaintiffs' claim is based.

        We find that the breach of express warranty allegations are thus subject to dismissal for failure to meet the pleading burden imposed by Rule 8(a)(2).   However, Plaintiffs will be afforded the opportunity to move for leave to amend the Amended Complaint to provide a sufficient factual basis for their breach of express warranty claim insofar as they are asserted against the Manufacturer Defendants.   Such proposed amended pleading should refrain from making collective express warranty allegations against "Manufacturer Defendants," but should specify the alleged express warranties as against each remaining individual

16

Manufacturer Defendant so that each Manufacturer Defendant may be put on notice as to which warranties Plaintiffs allege to have been breached.

More factual basis in Plaintiffs' pleading of the breach of express warranty claim insofar as asserted against the Manufacturer Defendants is also necessary in order for those defendants to form defenses based on the applicable statutes of limitations. (See Wilson Br. at 17-18 (stating that Wilson has a one-year warranty); Easton Br. at 16 (stating that Easton has a 400-day warranty covering "all manufacturing defects resulting from normal usage"); Nike Br. at 27 (stating that "to the extent that Nike opted to reduce the statute of limitations contractually, both express and implied warranties are limited to that period," but because the Amended Complaint lacks factual context, Nike has not "ascertain[ed] whether any express or implied warranty is time barred").[4]

**B.   League Defendants**

The New Jersey statute governing express warranties requires that express warranties be made by the "seller."  N.J.S.A. § 12A:2-313.  A seller is defined under the statute as a "person who sells or contracts to sell goods."  N.J.S.A. § 12A:2-103(1)(d).

---

[4] The Court makes no finding whatsoever as to the enforceability or relevance of the alleged express warranties.

17

The Amended Complaint is devoid of any suggestion that the League Defendants "sold" composite barreled bats.  Rather, it states that the League Defendants "licensed, endorsed, and approved" them.  Plaintiffs thus may not maintain their breach of express warranty claim against the League Defendants as a matter of law.  This claim will be dismissed with prejudice as to both League Defendants.

## IV.  Breach of Implied Warranty of Merchantability Claims

Plaintiffs' claims for breach of the implied warranty of merchantability assert that both the Manufacturer Defendants and the League Defendants impliedly warranted that "the composite barreled bats were in compliance with the BPF of 1.15 so as to be fit for the ordinary purpose for which the bats were sold, namely appropriate for use by youth baseball players in Little League and Babe Ruth as set forth on the labels and packaging of said bats."  (Am. Compl. at ¶¶ 68-69, 105-106.)

New Jersey's Uniform Commercial Code provides the cause of action for breach of the implied warranty of merchantability, stating in relevant part:

(1)  [A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .
(2)  Goods to be merchantable must be at least such as . . .
     (c)  are fit for the ordinary purposes for which such goods are used; and . . .
     (f)  conform to the promises or affirmations of fact made on the container or label if any.

18

N.J.S.A. § 12A:2-314(1), (2)(c)&(f).  Thus, in order for the
implied warranty of merchantability to be breached, the product
at issue must have been defective or not fit for the ordinary
purpose for which it was intended.  See Altronics of Bethlehem,
Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992).

    The warranty of merchantability is implied by law in every
contract for the sale of goods.  In re Toshiba Am. HD DVD Mktg. &
Sales Practices Litig., No. 08-939, 2009 WL 2940081, at *16
(D.N.J. Sept. 11, 2009).  To state a claim for breach of the
implied warranty of merchantability, Plaintiffs must allege "(1)
that a merchant sold goods, (2) which were not 'merchantable' at
the time of the sale, (3) injury and damages to the plaintiff or
its property, (4) which were caused proximately and in fact by
the defective nature of the goods, and (5) notice to the seller
of the injury."  In re Samsung Elecs. Am., Inc. Blu-Ray Class
Action Litig., No. 08-663, 2008 WL 5451024, at *5-6 (D.N.J. Dec.
31, 2008).

### A.   Manufacturer Defendants

    We find that the Amended Complaint does not state a claim
for breach of the implied warranty of merchantability.  Nothing
in the Amended Complaint suggests that the composite barreled
bats were defective or unfit for their ordinary purpose of
hitting baseballs.  See N.J.S.A. § 12A:2-315, cmt. 2 ("[T]he
ordinary purposes for which goods are used are those envisaged in
the concept of merchantability and go to uses of which are

customarily made of the goods in question.  For example, shoes
are generally used for the purpose of walking upon ordinary
ground.").  <u>See also</u> <u>supra</u> n.3 (noting that Plaintiffs'
allegation that the bats are "unusable" is illogical, as the bats
are still usable for recreational play and batting practice).
Nor is there any factual or legal basis for Plaintiffs'
suggestion that the ordinary purpose of the composite barreled
bats in question was for use by "youth baseball players <u>in Little
League and Babe Ruth</u>."  That is an alleged particular purpose,
not an ordinary one.

     The claim also fails because the Amended Complaint makes
clear that the composite barreled bats were in compliance with
the BPF of 1.15 at the time they were sold, but only exceeded the
BPF of 1.15 after a "break in" period, such there is no logical
inference to be made (and Plaintiffs have not alleged directly)
that the bats were not merchantable <u>at the time of the sale</u>.
(<u>See</u> Am Compl. at ¶ 25 (stating that research showed composite
barreled bats "exceed the BPF <u>once put into actual use</u>"); <u>id.</u> at
¶ 27 (stating that Babe Ruth noted that research showed composite
barreled bats can exceed BPF of 1.15 after a break-in period).)
Thus, the claim for breach of the implied warranty of
merchantability will be dismissed insofar as it is asserted
against the Manufacturer Defendants; however, Plaintiffs will be
afforded the opportunity to amend this claim.

**B.    League Defendants**

The claim for breach of the implied warranty of merchantability fails insofar as it is asserted against the League Defendants for the same reasons discussed above as to the Manufacturer Defendants.  The Court notes that an additional basis for dismissal of that claim with respect to the League Defendants exists.  Plaintiffs do not allege that either League Defendant is a "merchant with respect to goods of that kind," namely, composite barreled baseball bats.  See N.J.S.A. § 12A:2-314(1).  Plaintiffs allege only that the League Defendants "licensed, endorsed and approved" the composite barreled bats. Therefore, we find that the claim for implied warranty of merchantability must be dismissed with prejudice as to the League Defendants.

**V.    Breach of Implied Warranty of Fitness for a Particular Purpose Claims**

Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose alleges that the composite barreled bats were "advertised, marketed, manufactured and/or sold by the Manufacturer Defendants . . . to be used by youth baseball players in Little League and Babe Ruth," and that the Manufacturer Defendants "had reason to know of the particular purpose for which the composite barreled bats were being purchased-for use by children in Little League and Babe Ruth-which is why the Manufacturer Defendants advertised and

21

marketed the composite barreled bats as being in compliance with the BPF of 1.15 and authorized and/or approved by those youth baseball organizations." (Am. Compl. at ¶¶ 73-74.) Plaintiffs make similar allegations that the League Defendants knew that the bats were being purchased "for use by children in Little League and Babe Ruth–which is why the League Defendants agreed to license, endorse and approve the composite barreled bats as being in compliance with the BPF of 1.15." (Id. at ¶¶ 110-111.)

New Jersey's Uniform Commercial Code provides the cause of action for breach of the implied warranty of merchantability, stating in relevant part:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose.

N.J.S.A. § 12A:2-315. To state a claim for a breach of the implied warranty of fitness for a particular purpose, Plaintiffs must allege that (1) the seller had reason to know the buyer's particular purpose; (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer must actually rely upon the seller's skill or judgment. Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 92 (3d Cir. 1983).

New Jersey's Uniform Commercial Code does not contemplate the imposition of liability under both the implied warranty of

merchantability and the implied warranty of fitness for a particular purpose where the proponent argues that the ordinary purpose and the particular purpose are the same. Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 219 F.Supp.2d 600, 615 (D.N.J. 2002) (citing N.J.S.A. § 12A:2-315, cmt. 2 (distinguishing between a good's ordinary purpose from a particular purpose)); see also Franulovic, 2007 WL 3166953, at *6 ("It is axiomatic that a product's ordinary purpose cannot be the same as its particular purpose; without that distinction, there can be no claim for breach of implied warranty of fitness for a particular purpose.").

### A. Manufacturer Defendants

We find that as to the Manufacturer Defendants, Plaintiffs have not alleged facts that would support a finding that individual Manufacturer Defendants breached the implied warranty of fitness for a particular purpose; Plaintiffs' assertions are far too vague and generalized to discern any of the conditions of the "sale" of the composite barreled bats that might or might not support such a claim. However, it appears that Plaintiffs may be able to adequately re-plead this claim as to individual Manufacturer Defendants by alleging that particular composite barreled bats were bought by Plaintiffs, what Plaintiffs might have implied or communicated directly to the "sellers" of the bats about a particular purpose for which Plaintiffs sought to purchase the bats, and whether or how Plaintiffs relied upon a

particular seller's – not just "Manufacturer Defendants'" – skill or judgment in purchasing the composite barreled bats.  Thus, Plaintiffs will be provided an opportunity to amend this claim as to the Manufacturer Defendants.  Plaintiffs are advised to heed, however, the authorities demonstrating that a plaintiff may not allege that a good's ordinary purpose is the same as its particular purpose, and expect a claim for breach of the implied warranty of fitness for a particular purpose to survive.  If Plaintiffs intend to assert claims for both types of implied warranties, they should be pleaded in the alternative and be based on distinct alleged ordinary and particular purposes.

### B.   League Defendants

Dismissal of Plaintiffs' implied warranty of fitness for a particular purpose fails insofar as it is asserted against the League Defendants for the same reasons discussed above with respect to the Manufacturer Defendants.  We further find that the League Defendants cannot be liable for breach of the implied warranty of fitness for a particular purpose, as with Plaintiffs' other breach of warranty claims, because Plaintiffs have not and cannot allege that the League Defendants are "sellers" of composite barreled baseball bats.

### VI.  Unjust Enrichment Claims

The Amended Complaint pleads claims for unjust enrichment against both the Manufacturer Defendants and the League Defendants.  Plaintiffs seek restitution from the Manufacturer

Defendants of the "earned profits by the sale of composite barreled bats that do not meet the BPF of 1.15," and from the League Defendants of the "earned licensing fees and/or royalties and/or any other type of compensation from the Manufacturer Defendants for advertising that the composite barreled bats were licensed, approved and endorsed by the League Defendants."  (Am. Compl. at ¶¶ 81-82, 117-119.)

New Jersey law does not recognize unjust enrichment as an independent tort cause of action.  Torres-Hernandez, 2008 WL 5381227, at *9.  Rather, under New Jersey law,

> to establish unjust enrichment:  a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.  The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.

Va. Sur. Co. v. Macedo, No. 08-5586, 2009 WL 3230909, at *11 (D.N.J. Sept. 30, 2009); see also VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994).

The Amended Complaint contains no facts that could support an inference that Plaintiffs had any expectation of remuneration from either the Manufacturer Defendants or the League Defendants at the time they allegedly purchased the composite barreled bats in question.  It is presented as a tort-based theory of recovery, in that Plaintiffs do not allege that they did not receive the composite barreled bats they purchased, but rather that the

25

Manufacturer Defendants and League Defendants misrepresented that the composite barreled bats were in compliance with the BPF of 1.15 and were suitable for use in organized youth baseball.  See Warma Witter Kreisler, Inc. v. Samsung Elec. Am., Inc., No. 08-5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (holding that unjust enrichment claim of plaintiff claiming to have been misled by defendant as to fitness of product purchased "sound[ed] in tort" and thus was not cognizable under New Jersey law); see also Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 936 (3d Cir. 1999).  Therefore, Plaintiffs have not stated a claim for unjust enrichment.  See Cafaro v. HMC, No. 07-2793, 2008 WL 4224801, at *12 (D.N.J. Sept. 8, 2008).

   An additional basis for dismissing the unjust enrichment claim insofar as it is brought against the League Defendants exists.  Plaintiffs allege that the Manufacturer Defendants, not Plaintiffs, conferred a benefit on the League Defendants in the form of "licensing fees and/or royalties."  (Am. Compl. at ¶ 118.)  This allegation cannot support a claim for unjust enrichment against the League Defendants.  See Eli Lilly & Co. v. Roussell Corp., 23 F.Supp.2d 460, 496 (D.N.J. 1998) ("[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim.").

   A claim of unjust enrichment also requires that the plaintiff allege a sufficiently direct relationship with the

defendant to support the claim.  See Maniscalco, 627 F.Supp.2d at
505-06 (dismissing unjust enrichment claims brought by purchasers
of all-in-one printer devices against printer manufacturer,
because plaintiffs did not allege that they purchased the
printers from the defendant manufacturer, but rather conceded to
have purchased the printers from a third-party national retail
chain).  Such a direct relationship is lacking here with respect
to the League Defendants, as Plaintiffs do not allege that they
purchased any composite barreled bats from the League Defendants,
and is not alleged with any specificity as to any Manufacturer
Defendant.  Plaintiffs allege that they purchased the composite
barreled bats (1) directly from "[c]ertain of the Defendant
Manufacturers . . . via their web sites," (2) from "authorized
dealers," and (3) from "authorized online retailers."  (Am.
Compl. at ¶¶ 16-18.)  Thus, Plaintiffs' unjust enrichment claims
to the extent they concern composite barreled bats purchased from
any retailer besides one of the Manufacturer Defendants
themselves fail under New Jersey law.  Cooper v. Samsung Elec.
Am., Inc., No. 07-3853, 2008 WL 4513924, at *10 (D.N.J. Sept. 30,
2008) ("[A]lthough [plaintiff] alleges that Samsung was unjustly
enriched through the purchase of the television, there was no
relationship conferring any direct benefit on Samsung through
[plaintiff's] purchase, as the purchase was through a retailer,
Ultimate Electronics.").

27

Plaintiffs' claims for unjust enrichment will be dismissed with prejudice as to both the Manufacturer Defendants and the League Defendants.

## VII. Negligence Claims

Both the Manufacturer Defendants and the League Defendants assert that Plaintiffs' negligence claims against them must be dismissed pursuant to the economic loss doctrine.  The Court agrees.

The economic loss doctrine precludes a buyer of a product seeking damages for economic loss from asserting a negligence or strict liability claim.  Spring Motors Distribs., Inc. v. Ford Motor Co., 489 A.2d 660, 663 (N.J. 1985).  Because a buyer of products has adequate remedies under the Uniform Commercial Code, a "comprehensive system for compensating consumers for economic loss arising from the purchase of defective products," a "tort cause of action for economic loss duplicating the one provided by the U.C.C. is superfluous and counterproductive."  Alloway v. Gen. Marine Indus., L.P., 695 A.2d 264, 268, 275 (N.J. 1997).

This case presents a claim for negligence that is barred by the economic loss doctrine, insofar as "the Uniform Commercial Code provides a consumer buyer the exclusive remedy for direct economic loss resulting from conduct that constitutes the breach of express or implied warranties."  D'Angelo v. Miller Yacht Sales, 619 A.2d 689, 691 (N.J. App. Div. 1993).  Plaintiffs' negligence claim against the Manufacturer Defendants states that

28

Plaintiffs' damages were solely "the purchase price and applicable
interest."  (Am. Compl. at ¶ 87.)   The negligence claim against
the League Defendants makes refers to the League Defendants'
"acknowledged . . . duty of care to protect the safety of their
players," but there is no allegation of damages relating to
player safety, and this claim itself merely states with regard to
damages that the "League Defendants' negligence was the proximate
cause of damages suffered by the Plaintiffs and the Class," and
it is clear from the rest of the Amended Complaint that the only
"damage" claimed here is the purchase price of the bats (which,
again, are unspecified).  (Am. Compl. at ¶¶ 124, 128.)[5]

    The Court concludes that there is no basis for a negligence
claim on the facts alleged.  See Alloway, 695 A.2d at 267
(stating that "economic loss encompasses actions for . . . the

_____

[5]  Plaintiffs' allegation that Babe Ruth violated its "duty of
care to protect the safety of their players" by "cav[ing] to the
pressure from the Manufacturer Defendants by rescinding the
moratorium on the composite barreled bats just three weeks after
the moratorium was enacted," with the result that players
were able to use the bats in Babe Ruth, will not state a claim for
negligence against Babe Ruth.  (Am. Compl. at  ¶¶ 121-128; cf.
id. at ¶ 87.)  Youth baseball players are not parties to this
case, and for Plaintiffs to invoke player safety as a basis for a
negligence claim directly conflicts with Plaintiffs' assertion
that they have suffered damages as a result of not being able to
use the bats because of the safety-based moratoria and "approved"
lists utilized by the League Defendants when they became aware of
the issue.  As Babe Ruth points out, its lifting of the
moratorium resulted in "Plaintiffs [being] able to use the
composite barreled bats that now form the basis of this
Complaint," such that it is incongruous for Plaintiffs to suggest
that the lifting of the moratorium was a breach of duty to
Plaintiffs and/or the proximate cause of their damages.  (Babe
Ruth Br. at 22.)

diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold") (internal quotation omitted).  It is both barred by the economic loss doctrine, and in any event, the Amended Complaint merely conclusorily recites the elements of negligence and is devoid of any supporting facts from which the Court could plausibly infer that either the League Defendants or Manufacturer Defendants are liable to Plaintiffs.  Plaintiffs' negligence claim will therefore be dismissed with prejudice as to the Manufacturer Defendants and the League Defendants.

## VIII.    League Defendants' Charitable Immunity Defense

The League Defendants assert that Plaintiffs are barred from recovering against them under the New Jersey Charitable Immunity Act, N.J.S.A. § 2A:53A-7.  (Little League Br. at 21; Babe Ruth Br. at 22-23.)  The Charitable Immunity Act states provides:

> No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes . . . shall . . . be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association.

N.J.S.A. § 2A:53A-7(a).

Because the Court has found that Plaintiffs' negligence claim must be dismissed with prejudice, the Court need not reach the question of whether the League Defendants are entitled to charitable immunity.

## CONCLUSION

For the foregoing reasons, the separate motions to dismiss will be granted.  The Amended Complaint will be dismissed insofar as it is asserted against both the Manufacturer Defendants and the League Defendants.

Plaintiffs will be given leave to move before the Magistrate Judge for leave to file a Second Amended Complaint within forty-five (45) days.  Such putative motion should (1) attach the proposed amended pleading, as required by Local Civil Rule 7.1(f), and (2) be accompanied by a brief addressing the standard for leave to amend under Rule 15(a)(2), particularly why such amendment would not be futile in light of this Memorandum Opinion.  The proposed amended pleading may not assert any of the causes of action that the Court has indicated will be dismissed with prejudice.

The Court will issue an appropriate Order and Judgment.

   s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    December 23, 2011

31